**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ROBERTO H.P.,[1] | ) | Case No. EDCV 19-1543-JPR |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM DECISION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security Disability Insurance benefits ("DIB").  The matter is before the Court on the parties' Joint Stipulation, filed May 8, 2020, which the court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

---

[1] Plaintiff's name is partially redacted in line with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II.   BACKGROUND

Plaintiff was born in 1956.  (Administrative Record ("AR") 69, 139.)  He has a GED (AR 69, 155) and worked on a farm, in construction, and as a janitor (AR 69-70, 156, 165-69).  He applied for DIB on September 22, 2015, alleging that he had been unable to work since September 10, 2014 (AR 139), because of left-knee pain from having "no cartilage," "[a]rthritis" throughout his body, and back, hip, shoulder, neck, and right-knee "[p]roblems" (AR 154).  After his claim was denied initially and on reconsideration, he requested a hearing.  (AR 118-19.)  A hearing was held on February 27, 2018 (AR 64), at which Plaintiff, who was represented by counsel, testified (AR 66, 68-71, 73-77), as did a vocational expert (AR 71-73, 77-78).  In a written decision dated June 21, 2018, the ALJ found him not disabled.  (AR 60.)  Plaintiff requested review from the Appeals Council (AR 7), but it denied his request (AR 1).

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It is "more than a mere scintilla, but less than a preponderance."  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882

(9th Cir. 2006)).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's.  Id. at 720-21.

## IV.  THE EVALUATION OF DISABILITY

People are "disabled" for Social Security purposes if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.    The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine

3

whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 404.1520(a)(4)(ii) & (c).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii) & (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545(a)(1); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

gainful work available in the national economy, the fifth and final step of the sequential analysis.  §§ 404.1520(a)(4)(v), 404.1560(b).

B.  The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 10, 2014, the alleged onset date.  (AR 54 (citation omitted).)  His date last insured was March 31, 2018.  (Id.)  At step two, the ALJ determined that Plaintiff had severe impairments of osteoarthritis[3] of the left knee and spondylosis[4] of the cervical spine.  (Id. (citation omitted).) At step three, he found that Plaintiff's impairments did not meet or equal a listing.  (Id. (citations omitted).)  At step four, he concluded that Plaintiff had the RFC to perform the full range of medium work (AR 55), which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," § 404.1567(c), and "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday," SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).  Because he could perform his past relevant work as a "fruit farm worker II," DOT 403.687-010, 1991 WL 673305, and "industrial cleaner," DOT 381.687-018, 1991 WL 673258, as actually and generally performed and his past work as a

---

[3] Osteoarthritis is "arthritis characterized by erosion of articular cartilage" and results in "pain and loss of function." Stedman's Medical Dictionary 1282 (27th ed. 2000).

[4] Spondylosis is the stiffening of the vertebrae and is "often applied nonspecifically to any lesion of the spine of a degenerative nature." Stedman's Medical Dictionary 1678 (27th ed. 2000).

"construction worker II," DOT 869.687-026, 1991 WL 687635, as actually performed (AR 59), the ALJ found him not disabled (AR 60).[5]

## V.   DISCUSSION[6]

Plaintiff argues that the ALJ "failed to acknowledge" that the three medical opinions he relied on limited Plaintiff to six hours of standing or walking in an eight-hour workday.  (J. Stip. at 18-19.)  He claims this restriction rendered him unable to complete the full range of medium work the ALJ said he could.  (Id. at 18-21.)  Plaintiff also argues that the ALJ erred by failing to consider his right-knee impairment at step two of the five-step analysis (id. at 11) and in discounting his subjective symptom testimony (id. at 6-9).  For the reasons discussed below, any error was harmless.

---

[5] The ALJ also determined, at step five, that there were unspecified "other jobs" existing in the national economy that Plaintiff could perform.  (AR 59-60.)

[6] In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause.  To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.  (See AR 64-80, 110, 118-19, 135-38); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (plaintiff forfeits issues not raised before ALJ or Appeals Council); see also Kabani & Co. v. SEC, 733 F. App'x 918, 919 (9th Cir. 2018) (rejecting Lucia challenge because plaintiff did not raise it during administrative proceedings), cert. denied, 139 S. Ct. 2013 (2019).

A.   Applicable Background

1.   Objective medical and other evidence

On August 27, 2015, Plaintiff visited Anthony Smith, a certified physician's assistant, with complaints of left-knee pain.[7] (AR 228.)  He attributed the pain to a "head on car crash" (id.) but reported later that the pain began after he fell from a ladder while picking avocados in 1982 (AR 221).  He was given an osteoarthritic brace and was referred to a physical therapist for treatment of his left-knee pain, "[s]tiffness," "[i]nstability," and "[c]hronic" degenerative joint disease.  (AR 230.)  X-rays of his left knee taken that month showed "[m]arked medial, moderate patellofemoral and mild lateral joint compartment osteoarthritis with genu varus."[8]  (AR 215.)

Plaintiff began physical therapy on September 9, 2015.  (AR 212.)  He presented with an "[a]ntalgic gait pattern," with "decreased" weight bearing through his lower left leg.[9]  (Id.)  He arrived using a quad cane but was instructed to switch to a single-point one.  (Id.)  He had 127 degrees of flexion and zero degrees of extension in his left knee and 135 degrees of flexion and zero degrees of extension in his right.[10]  (Id.)  Examination revealed

---

[7] Although Plaintiff claimed disability beginning in September 2014, the earliest medical records in the record are from nearly a year later.  Indeed, Plaintiff acknowledged that he stopped working in September 2014 because he was "laid off."  (AR 155.)

[8] Genu varus is "an outward bowing of the legs."  Stedman's Medical Dictionary 739 (27th ed. 2000).

[9] An antalgic gait results from pain when bearing weight. Stedman's Medical Dictionary 722 (27th ed. 2000).

[10] Normal knee flexion for a male between ages 45 and 69 is 132.9 degrees.  Normal Joint Range of Motion Study, CDC,

left-knee "impairments associated with osteoarthritis." (AR 213.)
He had "[g]ood" rehabilitation potential. (AR 214.)

Treatment notes throughout October 2015 reflect continued reports of knee pain. (See AR 207-10, 232-34, 240-41, 265-66.) That month, Plaintiff visited Dr. Surya Reddy[11] complaining of right-knee pain. (AR 207.) Dr. Reddy diagnosed Plaintiff with "[g]eneralized osteoarthritis" and prescribed Tylenol and exercise.[12] (AR 208.) In a separate visit to PA Smith that month, he received a "[l]eft knee lateral joint line injection" to address his osteoarthritis. (AR 234.)

Plaintiff saw PA Smith again on January 7, 2016, complaining of pain on his left side. (AR 235.) He had an antalgic gait and 135 degrees of flexion, zero degrees of extension, and an active range of motion in his left knee. (AR 236.) He did not have "crepitation"[13] in the left patella but did have a positive McMurray

---

https://www.cdc.gov/ncbddd/jointrom/index.html (last visited July 21, 2020). Normal knee extension for a male of the same age is 0.5 degrees. Id.

[11] Dr. Reddy practices primarily family medicine. See Cal. Dep't Consumer Aff. License Search, https://search.dca.ca.gov (search for "Reddy" under "Last Name") (last visited July 20, 2020).

[12] Records in connection with Plaintiff's visits name Dr. Sharma Bishop as the treating doctor (see AR 82, 83, 94, 95), but corresponding treatment notes indicate that Plaintiff was treated by Dr. Reddy (see, e.g., AR 207-11).

[13] Crepitus refers to the "[n]oise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions." Stedman's Medical Dictionary 424 (27th ed. 2000).

test.[14]  (Id.)  He was prescribed a narcotic painkiller to take daily as needed.  (AR 237.)

Plaintiff visited Dr. Reddy on February 10, 2016, with shortness of breath and "mild" gastroesophageal reflux disease (AR 242) as well as pain in his right knee (AR 243.)  Dr. Reddy prescribed a narcotic painkiller.  (AR 243-44.)  X-rays of his right knee taken the following day showed "[m]arked medial and moderate patellofemoral and lateral knee joint compartment osteoarthritis," "[g]enu varus," and "[s]mall joint effusion."[15] (AR 246.)

Plaintiff complained to Dr. Hadia Ashraf[16] on October 30, 2017, of bilateral knee pain, decreased mobility, and joint tenderness. (AR 290.)  His left knee had an "[a]ctive painful" range of motion and 100 degrees of flexion.  (AR 289.)  His right knee does not appear to have been assessed.  (See AR 287-90.)  Despite having a "[l]imp" (AR 288), he was able to "heel-and-toe-walk normally" (AR 289).  He had tenderness on the right side of his sciatic notch but not the left.  (AR 288.)  He was able to move without pain in his lumbar spine, crepitus, or evident instability.  (Id.)  October 2017 x-rays of his cervical and lumbar spines showed

---

[14] The McMurray test is a "rotation of the tibia on the femur to determine injury to meniscal structures."  Stedman's Medical Dictionary 1805 (27th ed. 2000).

[15] Joint effusion is "increased fluid in synovial cavity of a joint."  Stedman's Medical Dictionary 570 (27th ed. 2000).

[16] Dr. Ashraf is a family-medicine doctor.  See Cal. Dep't Consumer Aff. License Search, https://search.dca.ca.gov (search for "Ashraf" under "Last Name") (last visited July 20, 2020).

1  "[s]pondylosis" and "degenerative disc disease"[17] (AR 283-84), and

2  x-rays of his left knee showed "[m]oderate osteoarthritic changes"

3  (AR 285).  No right-knee x-rays were taken.  (See AR 282-86.)

4  Plaintiff visited PA Smith again on November 1, 2017,

5  complaining of "moderate-severe" left-knee pain that was "chronic

6  non-traumatic," "occur[ing] with mild activity," and getting

7  "worse."  (AR 251.)  His left knee had an active range of motion,

8  flexion of 135 degrees, and extension of zero degrees.  (AR 253.)

9  His gait was "[a]ntalgic," and he presented with mild effusion and

10 mild swelling of the left knee and maximum tenderness of the left

11 medial joint line.  (Id.)  He had a positive McMurray test.  (Id.)

12 Smith diagnosed him with "[c]hronic" osteoarthritis (id.), but his

13 reflexes, sensation, and pulse were normal (id.).

14          2.   Medical-opinion evidence

15 On December 9, 2015, Plaintiff underwent a complete orthopedic

16 examination by Vicente Bernabe, an orthopedic surgeon, at

17 Defendant's request.  (AR 221-27.)  Plaintiff presented with

18 complaints of "left knee pain" and reported taking Tylenol for it.

19 (AR 221.)  Dr. Bernabe observed that he did not appear to be in

20 "acute or chronic distress" and "moved freely . . . without the use

21 of any assistive device."  (AR 222.)  His gait was normal, without

22 antalgia, and he "was able to toe and heel walk."  (Id.)  A

23 cervical-spine examination "revealed normal attitude and posture of

24 the head," without "significant tenderness to palpation," and his

---

25      [17] Degenerative disc disease is "a condition where one or more

26 discs in the back lose their strength" and "happens over time from

   wear and tear, or injury."  Everything You Should Know About

27 Degenerative Disc Disease (DDD), Healthline, https://

   www.healthline.com/health/degenerative-disc-disease (last visited

28 July 21, 2020).

range of motion was "full and painless." (Id.)  His thoracic
spine, lumbar spine, and right knee appeared normal.  (AR 222-23.)
His "[m]otor strength was grossly intact in the upper and lower
extremities," "[s]ensation" in the "lower extremities was well
preserved," and his "[r]eflexes were physiologic throughout."  (AR
224.)  Dr. Bernabe diagnosed him with "[m]ild to moderate
osteoarthritis" of the left knee.  (Id.)  He opined that Plaintiff
was able to lift 50 pounds occasionally and 25 pounds frequently,
push and pull on a frequent basis, walk and stand six hours in an
eight-hour day, sit without restriction, and bend, crouch, stoop,
and crawl frequently.  (AR 224-25.)

On December 21, 2015, state-agency physician S. Brodsky[18]
reviewed Plaintiff's records and found that his limitations did
"not prevent [him] from performing" his past work as a laborer as
generally performed in the national economy.  (AR 89-90.)  On March
28, 2016, state-agency physician S. Lee[19] reviewed Plaintiff's
records and adopted Dr. Brodsky's findings.  (AR 101-02.)

### 3.   Plaintiff's statements and testimony

In Plaintiff's undated initial Disability Report, he stated
that his ability to work was limited by the lack of cartilage in

---

[18] Dr. Brodsky specializes in surgery.  (See AR 85, 91 (showing
signature code of 45)); Soc. Sec. Admin., Program Operations Manual
System (POMS) DI 24501.004 (May 5, 2015), https://secure.ssa.gov/
apps10/poms.nsf/lnx/0424501004 (signature code 45 indicates
surgery).

[19] Dr. Lee specializes in ophthalmology.  (See AR 102 (showing
signature code of 28)); Soc. Sec. Admin., Program Operations Manual
System (POMS) DI 24501.004 (May 5, 2015), https://secure.ssa.gov/
apps10/poms.nsf/lnx/0424501004 (signature code 28 indicates
ophthalmology).

his left knee, "[a]rthritis" throughout his "[w]hole body," and back, hip, shoulder, right-knee, and neck "[p]roblems." (AR 154.)

At the February 27, 2018 hearing, Plaintiff testified that problems with his knees "[m]ainly" prevented him from working, characterizing his left knee as "worse" than his right. (AR 73.) He had "no cartilage" in his knees, which made it "very painful to walk." (Id.) He could walk for "[p]robably" 15 or 20 minutes before the pain forced him to sit down. (AR 73-74.) He initially used a four-prong cane from his wife, but a "doctor" later gave him a single-point one. (AR 75.) He could not stand for more than half of a "regular eight-hour day" and likely only for "[a]bout two hours." (AR 74.) He could not lift "buckets of cleaning solvent" weighing "about 40 pounds," a task he performed regularly as an industrial cleaner. (Id.)

He testified that he lived with his wife, daughter, and two grandchildren. (AR 76.) His grandchildren were nine and five at the time (id.), and both "stay[ed] with [him] in the mornings" until he drove them to school (AR 75). He "tr[ied] to help clean" by "picking up" trash (id.) and doing a "little bit" of yard work (AR 76), but he could not work all day because he'd "have to stay on [his] feet" (id.). He had difficulty driving because of shoulder pain that began two or three months before the hearing. (Id.) He also had pain in his neck, though "less than" the pain in his knees, and it sometimes traveled "towards [his] shoulder." (AR 77.)

### 4.   The ALJ's decision

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his symptoms were

"not entirely consistent" with the evidence in the record (AR 56),
including medical evidence and Plaintiff's daily activities (AR
59).  Though the evidence demonstrated that Plaintiff "suffered
from a medically determinable 'severe' impairment," it also
"establishe[d] that [he] retain[ed] the capacity to function
adequately to perform many basic activities associated with work."
(Id.)

        The ALJ noted that his assessment of Plaintiff's RFC as the
full range of medium work was supported by objective medical
evidence.  (Id.)  Further, treatment notes did "not sustain"
Plaintiff's allegations of disabling pain and limitations.  (Id.)
The ALJ reviewed August 2015 x-rays of Plaintiff's left knee (AR 56
(citing AR 240-49)), February 2016 x-rays of his right knee (AR 57
(citing AR 240-49)), and October 2017 x-rays of his cervical spine,
lumbar spine, and left knee (AR 58 (citing AR 283-90)).  He also
reviewed treatment notes from Plaintiff's September 2015 physical-
therapy examination (AR 57 (citing AR 207-20)), an October 2015
examination showing "only mildly reduced range of motion of the
bilateral knees" (id. (citing AR 207-20)), and Dr. Bernabe's
December 2015 examination report, finding that Plaintiff "was able
to toe and heel walk" and "did not use any assistive device to
ambulate" (id. (citing AR 221-27)).  In addition, he reviewed
treatment notes from a January 2016 doctor's visit reflecting
"continued complaints of left knee pain" (id. (citing AR 228-39)),
an October 2017 visit at which Plaintiff "complain[ed] of bilateral
knee pain" (id.), and a November 2017 visit for left-knee pain (AR
58 (citing AR 250-82)).

The ALJ further determined that the medical-opinion evidence supported the RFC. (AR 58-59.) He gave the opinions "great weight" because Dr. Bernabe had the opportunity to examine Plaintiff (AR 58) and the state-agency opinions were "consistent with the record" and "more recent evidence including that reflexes, sensation, and pulses [were] within normal limits, and with his reported activities" (AR 58-59 (citing AR 64-80, 250-82, 283-90)). Ultimately, he agreed with all three doctors that Plaintiff was able to perform the full range of medium work. (AR 55.) As for Plaintiff's daily activities, the ALJ found that they were not consistent with his allegations of total impairment. (AR 59.)

B.    Analysis[20]

1.    The ALJ properly considered the examining and reviewing medical opinions

Plaintiff argues that the ALJ "failed to acknowledge" that the three medical opinions to which he gave great weight "restricted standing/walking to six hours" and therefore rendered him incapable of performing the full range of medium work. (J. Stip. at 18-19.) He further alleges that the ALJ should not have relied on these opinions because the doctors did not review "probative evidence," including x-rays of his right knee and cervical and lumbar spines. (Id. at 9-12.) Finally, Plaintiff argues that the ALJ erred by failing to include his right-knee impairment as a "severe" impairment at step two of the five-step evaluation process. (Id. at 11.)

_____

[20] The Court addresses the issues in an order different from that briefed by the parties, for clarity and other reasons.

14

a.   *Applicable Law*

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. Id.; see § 404.1527(c)(1)-(2).[21] This is so because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (citation omitted).

The ALJ may discount a physician's opinion regardless of whether it is contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). When a doctor's opinion is not contradicted by other medical-opinion evidence, however, it may be rejected only for a "clear and convincing" reason. Magallanes, 881 F.2d at 751 (citations omitted); Carmickle, 533 F.3d at 1164

---

[21] For claims filed on or after March 27, 2017, the rules in § 404.1520c (not § 404.1527) apply. See § 404.1520c (evaluating opinion evidence for claims filed on or after Mar. 27, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." § 404.1520c(a). Thus, the new regulations eliminate the term "treating source" as well as what is customarily known as the treating-source or treating-physician rule. See § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and the Court therefore analyzes it under the treating-source rule in § 404.1527.

15

(citing <u>Lester</u>, 81 F.3d at 830-31).  When it is contradicted, the ALJ need provide only a "specific and legitimate" reason for discounting it.  <u>Carmickle</u>, 533 F.3d at 1164 (citing <u>Lester</u>, 81 F.3d at 830-31).  The weight given a doctor's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things.  <u>See</u> § 404.1527(c); <u>see also</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007) (factors in assessing physician's opinion include length of treatment relationship, frequency of examination, and nature and extent of treatment relationship).

Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  § 404.1567(c); <u>Villa v. Heckler</u>, 797 F.2d 794, 798 (9th Cir. 1986) (citations omitted).  SSR 83-10 provides descriptions of the standing and walking limitations that accompany light and medium work.  <u>James T. v. Saul</u>, No. 2:18-cv-08794-KES, 2019 WL 3017755, at *1 (C.D. Cal. July 10, 2019).[22]  SSR 83-10 states that a "full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds."  1983 WL 31251, at *6.  Further, "[a]s in light work, sitting may occur intermittently during the remaining time."  <u>Id.</u>

---

[22] Though SSRs lack the "force of law," they are the SSA's "'interpretations of the statute it administers and of its own regulations,' and are given deference 'unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations.'"  <u>James T.</u>, 2019 WL 3017755, at *1.

b.   *Analysis*

Plaintiff argues that SSR 83-10 makes a limitation of standing or walking no more than six hours — which was included in all three medical opinions the ALJ relied on — inconsistent with medium work. (J. Stip. at 18-21.)  According to him, the intermittent-sitting language implies that some standing must occur in the remaining two hours of the workday.  (Id. at 20-21.)  Although the language of SSR 83-10 is not as clear as one would hope, this interpretation is incorrect.  See James T., 2019 WL 3017755, at *2 ("ALJs . . . with experience conducting social security disability benefits hearings have understood medium work as requiring the ability to stand or walk for up to 6 hours.").  Tellingly, Plaintiff does not cite a single case to support his view.  To the contrary, courts have routinely interpreted SSR 83-10 as meaning medium work requires the ability to stand or walk for up to six hours.  See, e.g., id.; Candia v. Sullivan, 959 F.2d 239, 239 (9th Cir. 1992) (recognizing that "medium work requires that a person be able to stand for six hours during an eight hour work day"); Christopher P. v. Saul, No. CV 18-6484-SP, 2020 WL 551596, at *3 (C.D. Cal. Jan. 31, 2020) (noting that "full range of medium work involves . . . standing or walking up to approximately six hours in an eight-hour workday" (citing SSR 83-10)); Campos v. Astrue, 656 F. Supp. 2d 1179, 1189 (C.D. Cal. 2009) (explaining that "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday" (citing SSR 83-10)).

Contrary to Plaintiff's argument, limiting standing or walking to six hours a workday is not inconsistent with medium work.  The

17

medical opinions therefore support the ALJ's assessment of him as being capable of performing the full range of medium work.[23]

Plaintiff further alleges that the ALJ erred in relying on the medical opinions because the opining doctors did not review x-rays of his right knee, cervical spine, and lumbar spine taken in February 2016 and October 2017. (J. Stip. at 10-12.) Though he is correct that the opining doctors did not review those x-rays (see generally AR 82-86, 93-95, 221-27), which were taken after he submitted his DIB application, the ALJ did not err in discussing and relying on the opinions in determining the RFC. Dr. Bernabe, an orthopedic specialist, performed a complete examination, including of Plaintiff's right knee and cervical, thoracic, and lumbar spines. (AR 222-23.) "The right knee examination was normal and unrevealing," with "normal alignment and contour" and "no tenderness on palpation." (AR 223.) Further, the thoracic-spine examination was "unrevealing" and the cervical-spine examination "revealed normal attitude and posture of the head," with "full and painless" range of motion. (AR 222.) The lumbar-spine examination showed that "[r]ange of motion was full in all planes without pain." (AR 223.) The two state-agency physicians reviewed Dr. Bernabe's report in making their assessments. (See AR

---

[23] It appears, however, that the ALJ erred in finding that Plaintiff could perform his past relevant work as a fruit farm worker II and industrial cleaner as actually performed because Plaintiff did those jobs without ever sitting. (See AR 70, 166, 168.)  Any error was harmless, however, because he could perform those medium-work jobs as generally performed.  See Romo v. Berryhill, 731 F. App'x 574, 579 (9th Cir. 2018) (finding that ALJ's error in determining claimant could perform certain past relevant work as actually performed was harmless because ALJ properly found claimant capable of performing other past relevant work as generally performed).

18

86-87, 97-98.)  Given this, despite not reviewing the x-rays, all three physicians assessed or evaluated Plaintiff's right-knee and spine ailments.

More importantly, the ALJ is ultimately responsible for assessing a claimant's RFC.  See § 404.1527; Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).  Though the physicians did not review evidence of Plaintiff's right-knee and spine ailments past early 2016, the ALJ separately evaluated Plaintiff's complete treatment record in determining that he was capable of the full range of medium work.  (See generally AR 56-58.)  Plaintiff's complaints of right-knee pain were limited.  (See AR 207-08, 240-44 287-90).  Though he listed right-knee "[p]roblems" in his DIB application (AR 154), he complained of pain from it only on three occasions over approximately 26 months (see AR 207-08, 240-44, 287-90), with numerous doctor or physical-therapy appointments where he never mentioned it (see, e.g., AR 212, 221, 228, 232, 235).  His complaints of back pain were even less frequent.  (See generally id. & AR 207-08, 240-44 (complaining of right-knee pain but not back pain).)  The ALJ reviewed all the x-rays, as well as the treatment notes throughout Plaintiff's course of treatment.  (See generally AR 56-58.)  For example, he reviewed treatment notes from an October 2015 examination, noting that Plaintiff had "only mildly reduced range of motion of the bilateral knees" and was told to take Tylenol and to exercise, indicating that he was capable of weight-bearing activity.  (AR 57 (citing AR 207-20).)  Further, the ALJ discussed the February 2016 x-rays of Plaintiff's right knee (id. (citing AR 240-49)) and treatment notes from his October 2017 visit with Dr. Ashraf, at which he complained of bilateral knee

pain (AR 57-58).  The ALJ noted that "he was able to heel and toe
walk normal[ly]" during that visit (AR 57), which was only a few
months before the hearing.

Plaintiff points out that his February 2016 right-knee x-ray
"revealed findings similar to his left knee," including "marked
medial and moderate patellofemoral and lateral knee joint
compartment osteoarthrosis, genus varus, and small joint effusion."
(J. Stip. at 10 (citation omitted).)  Though those x-rays do show
that the condition of his right knee was physiologically similar to
his left, treatment notes provide substantial support for the ALJ's
assessment that he was able to perform the full range of medium
work.  As the ALJ noted, Plaintiff was able to toe and heel walk
over the course of his treatment.  (See generally AR 56-58.)
Indeed, Dr. Bernabe's December 2015 report indicated that he could
"toe and heel walk," "move[] freely," and walk without the use of
any assistive device.  (AR 222.)  Further, sensation was "well
preserved" in the lower extremities.  (AR 224.)  Treatment notes
from his visit to Dr. Ashraf in October 2017, over a year after his
February 2016 right-knee x-rays, show that though he had a "[l]imp"
(AR 288), he was able to "heel-and-toe-walk normally" (AR 289).
Dr. Ashraf ordered x-rays of his cervical spine, lumbar spine, left
knee, and shoulder but not of his right knee, suggesting that his
right-knee pain was not a pressing concern.  (AR 283-86.)  And
Plaintiff did not complain of right-knee pain at his November 2017
visit to PA Smith (AR 251), and he conceded during his hearing
testimony that his "left knee [was] worse" than his right (AR 73).
Though this evidence does demonstrate a right-knee impairment, it
also provides substantial evidence for the ALJ's assessment of

Plaintiff's RFC. <u>See</u> <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." (citation omitted)). Remand is not warranted on this basis.[24]

 2. <u>The ALJ permissibly discounted Plaintiff's</u>
 <u>subjective symptom statements and testimony</u>

Plaintiff contends that the ALJ erred in rejecting his subjective symptom testimony as inconsistent with the objective and other medical evidence and his daily activities. (J. Stip. at 5-8.)

 a. *Applicable Law*

An ALJ's assessment of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight." <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (as amended) (citation omitted); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112

---

[24] Any error in not including Plaintiff's right knee as a "severe" impairment at step two (J. Stip. at 11) was harmless because "[s]tep two is merely a threshold determination" that "screen[s] out weak claims" and "is not meant to identify the impairments that should be taken into account when determining the RFC," <u>Buck v. Berryhill</u>, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citations omitted). In assessing a claimant's RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" so impairments not listed in step two must be addressed in the evaluation process. <u>Id.</u> (citations omitted). Here, as discussed, the ALJ fully considered treatment records reflecting Plaintiff's right-knee impairment. (<u>See</u> AR 56-58.)

1   (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

2   1989)).  In evaluating a claimant's subjective symptom testimony,

3   the ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d

4   at 1035-36; see also SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16,

5   2016).  First, the ALJ must determine whether the claimant has

6   presented "objective medical evidence of an underlying impairment

7   '[that] could reasonably be expected to produce the pain or other

8   symptoms alleged.'"  Lingenfelter, 504 F.3d at 1036 (citation

9   omitted).  If such objective medical evidence exists, the ALJ may

10  not reject a claimant's testimony "simply because there is no

11  showing that the impairment can reasonably produce the degree of

12  symptom alleged."  Id. (citation omitted; emphasis in original).

13      If the claimant meets the first test, the ALJ may discount the

14  claimant's subjective symptom testimony only if he makes specific

15  findings that support the conclusion.  See Berry v. Astrue, 622

16  F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or affirmative

17  evidence of malingering, the ALJ must provide a "clear and

18  convincing" reason for rejecting the claimant's testimony.  Brown-

19  Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended)

20  (citing Lingenfelter, 504 F.3d at 1036); Treichler v. Comm'r of

21  Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014).  The ALJ may

22  consider, among other factors, the claimant's (1) reputation for

23  truthfulness, prior inconsistent statements, and other testimony

24  that appears less than candid; (2) unexplained or inadequately

25  explained failure to seek treatment or follow a prescribed course

26  of treatment; (3) daily activities; (4) work record; and (5)

27  physicians' and third parties' statements.  See Rounds v. Comm'r

28  Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended);

Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the ALJ's evaluation of a plaintiff's alleged symptoms is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing."  Thomas, 278 F.3d at 959.

In evaluating a claimant's subjective symptoms, the ALJ considers "all of the available evidence" in the record, § 404.1529(c)(1), including the "objective medical evidence," § 404.1529(c)(2), and "other evidence" from medical sources, § 404.1529(c)(3).  Objective medical evidence is obtained through "medically acceptable clinical and laboratory diagnostic techniques." § 404.1529(c)(2).  "[O]ther evidence" is everything else relevant to evaluating symptoms, including, for example, "medical opinions about the individual's symptoms and their effects" and the "longitudinal record of any treatment and its success or failure."  SSR 16-3p, 2016 WL 1119029, at *6; see § 404.1529(c)(3) (evidence from medical sources about what precipitates or aggravates pain, medications or treatments prescribed or used to alleviate it, and how it affects claimant's daily life are all "other evidence").  Contradiction with the "objective medical evidence" is a "specific and legitimate" basis for rejecting a claimant's subjective symptom testimony.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); see § 404.1529(c)(2).  But it "cannot form the sole basis for discounting" it.  Burch, 400 F.3d at 681; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (applying earlier version of § 404.1529(c)(2)).

b.   *Analysis*

The ALJ outlined clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

First, the ALJ properly concluded that Plaintiff's claims were inconsistent with the objective medical evidence (AR 56), which is a valid basis for discounting a claimant's subjective symptom testimony, Morgan, 169 F.3d at 600; § 404.1529(c)(2).  Plaintiff claimed he was able to walk for only about 15 to 20 minutes without pain (AR 73-74), but as the ALJ noted, treatment notes showed that he was able to toe and heel walk normally over the course of treatment (see generally AR 56-58), even after his February 2016 x-ray showing osteoarthritis, genu varus, and small joint effusion in his right knee (see AR 246).  Further, Plaintiff had a painful but active range of motion in his left knee (see generally AR 56-58), and October 2017 treatment notes from an examination of his lumbar spine noted that "motion was without pain, crepitus, or evident instability" (AR 57 (citing AR 283-90)).  Also, a September 2015 physical-therapy examination found "[g]ood" rehabilitation potential (AR 214), and November 2017 treatment notes indicated that he had flexion of 135 degrees in his left knee (AR 253), which is higher than normal for a male his age, see Normal Joint Range of Motion Study, CDC, https://www.cdc.gov/ncbddd/jointrom/index.html (last visited July 21, 2020).

The ALJ also noted that the medical opinions contradicted Plaintiff's claims that his symptoms prevented him from working. (AR 58.)  The ALJ's reliance on these medical opinions in discounting Plaintiff's subjective symptom statements was proper.

See Molina, 674 F.3d at 1113 (examining doctor's opinion that condition "was not severe" and could be "controlled" was "specific, clear, and convincing reason[]" to reject subjective symptom testimony); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (per curiam) (examining doctor's assessment that plaintiff "could do sedentary work" was "specific" and "valid" reason to reject his "claims of excessive pain").  As explained above, the ALJ gave specific and legitimate reasons for giving great weight to the three opinions, and no doctor opined contrary to them.

Plaintiff argues that the "ALJ failed to explain how [his] reported activities . . . demonstrated the ability to perform medium work." (J. Stip. at 7.)  But even if the ALJ did err in discounting Plaintiff's testimony as inconsistent with his daily activities, the error was harmless because he provided two other valid reasons for discounting the testimony.  See Howland v. Saul, 804 F. App'x 467, 471 (9th Cir. 2020) (holding that ALJ's error in relying on claimant's daily activities to discount her subjective symptom testimony was harmless because "the ALJ offered other specific, clear and convincing reasons" for doing so (citation omitted)).

The ALJ stated clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's subjective symptom testimony.  Remand is not warranted on this basis.

**VI.  CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[25] IT IS ORDERED that judgment be entered

_____

[25] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a

1  AFFIRMING the Commissioner's decision, DENYING Plaintiff's

2  request for remand, and DISMISSING this action with prejudice.

3

4  DATED: <u>July 27, 2020</u>

   JEAN ROSENBLUTH
5  U.S. MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  judgment affirming, modifying, or reversing the decision of the
   Commissioner of Social Security, with or without remanding the
28  cause for a rehearing."

26